UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHN L. MEACHAM,

                Plaintiff,                             Civil No. 09-6002-HA

                   v.                            OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____

HAGGERTY, District Judge:

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the

Act). Plaintiff requests judicial review of a decision by the Commissioner of the Social Security

Administration denying his application for disability insurance benefits (DIB). He seeks an

order reversing the Commissioner's decision and remanding this case for an award of benefits.

This court has jurisdiction under 42 U.S.C. § 405(g). After reviewing the record of this case and

evaluating counsel's arguments, this court concludes that this action must be remanded for the

calculation and award of benefits.

1  - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed his application for DIB on August 3, 2004. Tr. 86.[1] Plaintiff's application was denied initially and upon reconsideration. An administrative law judge (ALJ) conducted a hearing, and subsequently issued a decision finding that plaintiff could perform past relevant work. Tr. 290-305. The Appeals Council initially remanded the decision, and a second hearing was conducted on May 22, 2008. Tr. 419-36. The ALJ concluded that plaintiff was ineligible for DIB because he could perform jobs that existed in significant numbers in the national economy. Tr. 10-25. The Appeals Council denied plaintiff's request for review, rendering the ALJ's conclusions the Commissioner's final decision for purposes of judicial review.

## FACTUAL BACKGROUND

Plaintiff was forty-seven on September 2, 2008, the date of the ALJ's second unfavorable decision. He completed the eighth grade. His past relevant work experience includes working as greens keeper, an industrial truck driver, and a tractor trailer truck driver. He alleges disability dating from July 22, 2004, primarily because of bipolar disorder and manic depression. Other facts are addressed as necessary in the analysis below.

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable

---

1    Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See* 20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings).

The Listings describe, for each of the major body systems, impairments which qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed to be disabled.

If the impairment is not one that is presumed to be disabling,  the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual could do in a work setting despite the total limiting effects of all the claimant's impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, at step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her  RFC.

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act.  *See* 20 C.F.R. § 404.1520(f)(1).  If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

4   - OPINION AND ORDER

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097-98 (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).  This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the sequential analysis, the ALJ found that plaintiff had engaged in SGA for three months since July 22, 2004.  Tr. 15-16.

At step two, the ALJ found that plaintiff suffered bipolar disorder, a severe impairment. Tr. 16.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments in the Listings of Impairments.  Tr. 16-17.

The ALJ then determined plaintiff's RFC as being free from exertional limitations, but plaintiff is limited to activities that involve no close interaction with co-workers or the general public.  Plaintiff can perform no complex or detailed tasks, and cannot have frequent changes in his job routine.  Plaintiff can not operate hazardous equipment.  Tr. 17.

5  - OPINION AND ORDER

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 23.

At step five, the ALJ found that plaintiff was not disabled because he could perform other work existing in significant numbers in the national economy. The ALJ was compelled to conclude that plaintiff was not eligible for DIB.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits because the ALJ improperly rejected medical opinions from plaintiff's treating psychiatrist, and the ALJ improperly rejected plaintiff's own testimony.

## DISCUSSION

### 1.    Medical opinions

Plaintiff contends that the ALJ did not provide sufficient reasons for rejecting the medical opinions expressed by Dr. Robert Vandiver, a psychiatrist and the Medical Director of Linn County Mental Health (LCMH). Plaintiff began treating with Dr. Vandiver on March 1, 2005. Tr. 246.

Plaintiff reported that when depressed, he slept excessively, felt anxious, isolated, had decreased concentration, and had increased irritability with frequent crying. *Id*. When becoming manic, he felt euphoric and needed less sleep. Tr. 247. He reported having tried Lithium, Prozac, Paxil, amitriptyline, and Wellbutrin. *Id*. Doctor Vandiver diagnosed Bipolar I Disorder, most recently depressed and of potentially severe intensity with psychotic features. Tr. 248.

Plaintiff treated with Dr. Vandiver at least through June 2008. Tr. 239, 257-274,

346-367, 372.  Plaintiff's medication was modified frequently, due to either poor tolerance or

poor efficacy.  *Id.*  On June 8, 2005, plaintiff reported going off his medication due to

depression.  Tr. 273.  The psychiatrist noted that plaintiff:

> is circling the drain, and if he does not watch out, he could very quickly go
> actively manic. He should be back on his Depakote again to say the least. It is
> unfortunate to hear that he was feeling blue. Certainly he reversed the problem
> partially by chemically forcing a hypomania by stopping his Depakote, but that
> does not mean he should be throwing out his mood stabilizer.

*Id.*

On November 7, 2005, plaintiff's wife reported that plaintiff assaulted her after having

been off his medication for approximately two months.  Tr. 271.  The doctor noted that while

"the medicine does not seem to help him in any way that he can discern, . . . it is making a

sizable impact upon his ability to function with his wife and probably others."  *Id.*

Plaintiff presented on December 20, 2005, to Dr. Vandiver in a depressed state.  Tr. 268.

When Dr. Vandiver refused to prescribe Vicodin, which plaintiff had requested in hopes of

getting himself "out of his doldrums," plaintiff became upset and Dr. Vandiver felt "somewhat

threatened."  *Id.*  Doctor Vandiver documented that plaintiff was not taking his medications

properly.  Tr. 271, 262, 365.  On March 5, 2007, Dr. Vandiver completed a Mental Residual

Functional Capacity Assessment (MRFC), finding plaintiff severely limited in his ability to

complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number of lengthy rest

periods.  Tr. 288:

> While I do not have the opportunity to observe John in the settings or challenges
> noted above I can answer the above using analogous behaviors in my clinic.  He
> appears neat and clean and can seem quite coherent and focused.  However,
> despite a rather unchallenging lifestyle, he frequently misses med appointments

and frequently decides to stop taking his meds, using judgment that is rather poor and that sabotages what effectiveness and stability he could otherwise enjoy.  In other words, he may do well on job interviews, but lose the job shortly thereafter.

Tr. 289.

In a letter dated October 11, 2007, Dr. Vandiver wrote:

John Meacham is an individual who I have been working with for well over a year now. He seems to be a rather well put-together guy when you first meet with him, but he unfortunately struggles with symptoms of bipolar mood disorder that so far have not responded well to treatment.  Consequently, while it seems like he might be a good employment candidate, he can only tolerate part-time work, and he should not be considered for any job that has him working more than 20 hours per week.

Tr. 370.

On October 12, 2007, plaintiff underwent intake screening at LCMH.  Tr. 342.  He reported feeling depressed and stressed, with rapid cycling mood and insomnia, after recently being laid off work.  *Id*.  He was admitted to the emergency room and started on Valium.  Tr. 343.  On December 3, 2007, Dr. Vandiver noted that plaintiff had been "changing his meds a lot lately, stopping them at times and taking them in double strength at others."  Tr. 346.

On June 25, 2008 Dr. Vandiver wrote to plaintiff's counsel that plaintiff "struggled chronically with a lot of different symptoms of bipolar disorder and has unfortunately not responded as well as I would like to various forms of pharmocotherapy."  Tr. 372.  He noted that plaintiff's symptomatology continued to "essentially smolder  along."  *Id*.

The doctor wrote:

One should be reminded that attacking depressive symptoms head-on with an antidepressant in bipolar mood disorder frequently results in worsening the situation rather than helping it. Consequently he has struggled with a life characterized by prominent irritability and inability to tolerate much that life challenges him with.

8   - OPINION AND ORDER

*Id.*

Doctor Vandiver opined that plaintiff "feels helpless to everything," and noted that plaintiff would "frequently go off his medications, leading to further instability." *Id.*

Doctor Vandiver concluded:

> I do not believe that John would be able to tolerate any more than part-time employment and at that I am being a bit of an optimist. What is so hard to reconcile is the fact that while he in fact has these difficulties, he presents in such a way that he behaves entirely capable of full-time gainful employment. One should not be fooled by superficial appearances because his matter-of-fact style may portray a certain competence but just behind it is a man who collapses easily under the weight of most any stressor and I would hate to see him worsen as a result of an artificially determined level of competence in the employment theater.

Tr. 372-373.

In making a determination about plaintiff's eligibility for DIB, the ALJ credited Dr. Vandiver's opinions in finding that plaintiff was limited to no detailed or complex tasks or instructions; no close interactions with the general public and co-workers; no frequent changes in his daily work routine; and no hazardous machinery or equipment.  Tr. 21, 22, 23.  However, the ALJ also rejected some of plaintiff's limitations that Dr. Vandiver identified on the MRFC form. Tr. 20-21, 286-89.  The ALJ noted that Dr. Vandiver qualified his opinions by stating that plaintiff frequently missed appointments and elected to stop taking medications, "using judgment that is rather poor and that sabotages what effectiveness and stability he could otherwise enjoy." Tr. 20 (quoting Tr. 289).  The ALJ rejected Dr. Vandiver's views that plaintiff's functional limitations would not improve, on grounds that plaintiff had been non-compliant with treatment. Tr. 20-21.

The ALJ also partially rejected Dr. Vandiver's MRFC because the limitations identified in the evaluation were viewed as inconsistent with plaintiff's ability to sustain a part-time job for

9   - OPINION AND ORDER

one year and eight months. Tr. 20. Defense counsel argues that "[p]laintiff's difficulties in working as a part-time greens keeper were relatively mild, and they were not consistent with the significant difficulties that Dr. Vandiver anticipated for full-time work." Dft's Brief in Opp., p. 12 (citations omitted).

An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted opinion from a treating or examining physician by providing clear and convincing reasons, supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing physician's conclusions. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Lester*, 81 F.3d at 830; *see also Carmickle v. Comm'r.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (opinions from doctors with the most significant clinical relationship with the claimant are generally entitled to more weight than opinions from doctors with lesser relationships).

An ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citation omitted). Although a treating physician's opinion "is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144,

1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  An ALJ

need not accept a treating physician's opinion that is conclusory or brief.  *Tonapetyan*, 242 F.3d

at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  Similarly, an ALJ may

discredit the opinions of a treating physician that are unsupported by objective medical findings.

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not

accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately

supported by clinical findings" or "by the record as a whole").

There is no dispute that Dr. Vandiver's opinions are well-supported by thorough clinical

findings.  Instead, defendant's primary argument in support of the ALJ's analysis is that the ALJ

accepted *some* of Dr. Vandiver's views, and in rejecting other opinions, the ALJ reasonably

relied upon Dr. Vandiver's own observations of plaintiff's poor judgment, the evidence that

plaintiff sustained part-time employment, and the fact that the ALJ, not physicians, determines

whether a claimant can perform SGA.

Plaintiff's poor judgment generally – and his inconsistent compliance with medications

specifically – is a manifestation of his mental illness.  Doctor Vandiver's references to plaintiff's

judgment were made in the context of evaluating plaintiff's illness and his limitations.  Tr. 289.

That judgment presents insufficient grounds for discounting Dr. Vandiver's medical opinions.

Moreover, the record contains no evidence supporting the ALJ's apparent belief that

plaintiff is capable of sustained compliance with treatment, and that with such compliance, his

functional limitations would improve.  Instead, the record is replete with Dr. Vandiver's

observations that plaintiff struggled with a range of medications and their varying effectiveness.

11 - OPINION AND ORDER

Tr. 372. There is no evidence that any medication, or combination of medications, offered plaintiff relief from his debilitating symptoms of stress and agitation.

Similarly, the ALJ's conclusion that Dr. Vandiver's views about plaintiff's inability to perform full-time employment deserve less weight because plaintiff successfully participated in part-time work is unwarranted. The ALJ's conclusion that Dr. Vandiver's views were "totally at odds with" plaintiff's recent part-time employment is unsupported by the record. Tr. 20. Doctor Vandiver expressed specific medical opinions about plaintiff's ability to handle stress. Plaintiff's recent demonstration that he could cope with part-time work is insufficient to refute Dr. Vandiver's medical opinions about plaintiff's limitations.

Defendant's argument that the ALJ's conclusions should be upheld because Dr. Vandiver's opinions trespassed upon issues of employability that are reserved for the ALJ is rejected. While an ALJ is not bound by a physician's opinion on the issue of disability, the ALJ must comply with the requirements to reject contradicted opinions of a treating physician with specific and legitimate reasons, and to reject uncontradicted opinions from a treating physician with clear and convincing reasons, supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1216.

This court is compelled to conclude that the reasons provided by the ALJ for discounting Dr. Vandiver's opinions fail to meet these standards. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

## 2.    Plaintiff's Testimony

Plaintiff also contends that the ALJ failed to present sufficient reasons for rejecting plaintiff's testimony. Plaintiff testified that he suffered from rapid cycling, low self esteem, and

feeling hopeless. Tr. 424. He acknowledged that he initially maintained employment despite

bad spells, but that his condition gradually worsened, and he had trouble maintaining part-time

employment, even working only two days per week. Tr. 425-26. He testified than when he

attempted full-time employment, he became manicky, stressed, and groggy. Tr. 427. He

believed he could work two full days and a half day before needing a day off.

The ALJ rejected aspects of this testimony. The ALJ cited "significant issues with

non-compliance" by plaintiff regarding his treatment. Tr. 18, 19. The ALJ also referenced

plaintiff's poor compliance with medical appointments and his medication regimen.

Additionally, the ALJ referred to plaintiff's "drug-seeking behavior." Tr. 19. Defendant argues

that the ALJ properly discounted plaintiff's credibility because of the incident in which plaintiff

requested Vicodin and was rebuffed by Dr. Vandiver.

An ALJ need not believe every allegation of disabling pain or functional limitation

advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Instead, a two-

step analysis applies at the administrative level when considering a claimant's subjective

credibility. At step one, "the claimant 'must produce objective medical evidence of an

underlying impairment' or impairments that could reasonably be expected to produce some

degree of symptom," and "if the the claimant meets this threshold and there is no affirmative

evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her

symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti*,

533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-84 (9th Cir. 1996); s*ee also*

SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to

any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight")).

The ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation (such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) and inadequately explained failures to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider conflicting medical evidence, effective medical treatment, inconsistent statements, daily activities inconsistent with the alleged symptoms, and testimony that is vague or less than candid. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039-40 (9th Cir. 2007); *see also Light v. Commissioner*, 119 F.3d 789, 792 (9th Cir. 1997) (the ALJ also may consider a claimant's work record and the observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms).

A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F. R.§§ 404.1529(c)(2); 416. 929(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

No substantive evidence of malingering was presented. The ALJ instead relied upon plaintiff's poor compliance efforts, and plaintiff's single documented request for Vicodin, to discount plaintiff's testimony. These are insufficient reasons.

The ALJ recognized plaintiff's bipolar disorder as a severe impairment. As noted above, plaintiff's poor judgment is a consequence of his impairment. That judgment provides

inadequate grounds by itself for discounting medical opinions, or for discrediting plaintiff.  The

incident in 2005 in which plaintiff sought Vicodin is nothing more than an example of plaintiff's

fluctuating judgment and, without more, is insufficient to discount testimony provided two and

three years later.

### 3.    Remand

Because the errors committed by the ALJ regarding the evaluation of Dr. Vandiver's

opinions and plaintiff's testimony are not harmless, remand of this action is necessary.  A court

may remand a Social Security disability case under either sentence four or sentence six of 42

U.S.C. § 405(g).  *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007).  A

sentence-four remand is essentially a determination that the Commissioner erred in denying

benefits.  *Id*. (citations omitted).

Sentence four provides that the district court "shall have power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing"

and is "essentially a determination that the agency erred in some respect in reaching a decision to

deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. §

405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).

The issues presented here compel a remand under sentence four.  The decision whether to

remand under sentence four for further proceedings or for immediate payment of benefits is

within the discretion of the court.  *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).  "[A]

remand for further proceedings is unnecessary if the record is fully developed and it is clear from

the record that the ALJ would be required to award benefits." *Holohan v. Massanari*, 246 F.3d

15 - OPINION AND ORDER

1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id*. "[I]n cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act, 'to give financial assistance to disabled persons because they cannot sustain themselves.'" *Id*. (quoting *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995)).

A reviewing court should credit evidence and remand for a finding of disability and an award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues to be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. *Smolen*, 80 F.3d at 1292.

Under these standards, a remand for a finding of disability and an award of benefits is appropriate here. When evaluating the opinions and conclusions of Dr. Vandiver and with the proper weight given to those opinions, it is clear from the record that plaintiff's severe impairment renders him incapable of full-time employment.

When it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited, additional proceedings are unnecessary to determine plaintiff's entitlement to benefits. *See Smolen*, 80 F.3d at 1292 (remanding for an award of benefits is appropriate where the record is fully developed, and further proceedings "would serve no useful purpose").

The record presented establishes that plaintiff cannot perform any SGA that exists in the national economy, and the case need not be returned to the ALJ. *Benecke*, 379 F.3d at 595. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win;

tails, let's play again' system of disability benefits adjudication." *Id*. (citations omitted).  As the *Benecke* court summed up:

> Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.

*Benecke*, 379 F.3d at 595 (citations and internal quotations omitted).

## **CONCLUSION**

Given the foregoing, there are no outstanding issues in this matter that require resolution. The court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose.  Under the applicable standards, and after giving the evidence in the record the effect required by law, this court finds that plaintiff is unable to engage in any substantial gainful activity by reason of his impairment, and he is disabled under the Act.  The final decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the proper calculation and award of DIB on behalf of plaintiff John L. Meacham.

IT IS SO ORDERED.

DATED this  _3_  day of March, 2010.

 /s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge

17 - OPINION AND ORDER